13063.   GREEN v. THE STATE.

13064.   JONES v. THE STATE.

BLOODWORTH, J. The plaintiffs in error in the above-stated cases were jointly indicted and jointly tried, but the cases are in this court on separate bills of exceptions. In neither case is the evidence sufficient to support a verdict of guilty, and the judge erred in overruling the motions for new trial, and the judgment in each case is
Reversed. *Broyles, C. J., and Luke, J., concur.*
DECIDED JANUARY 18, 1922.

Indictment for burglary; from Coweta superior court — Judge Roop. October 12, 1921.

. Green and Jones were convicted of burglary, under an indictment in which, jointly with Jackson, Landrum, and Tanner, they were charged with having broken and entered the storehouse of the H. W. Camp Company with intent to steal. From the evidence it appeared that the breaking and entering was by Jackson, Landrum, and Tanner. There was evidence that Green and Jones went in Green's truck to a point about two miles from the storehouse, and that goods which their codefendants had taken from the storehouse and brought in an automobile to that point were transferred to Green's truck, but this was denied by Green and Jones. It was testified by Jackson that he and Landrum and Tanner, when going in an automobile at night from College Park, overtook Green and Jones, who were in a Buick truck, in the road at a point in Clayton county about two miles from College Park, and Green and Jones went along in the truck as far as about two miles from Moreland, in Coweta county, and stopped there, while Jackson and the others went on to Moreland and there burglarized the storehouse, arriving there about 12:30 o'clock and staying there about forty minutes, and that when returning they saw Green and Jones with the truck, which was standing in the road; that the automobile containing the stolen goods passed the truck, and Jackson

and those with him called to Green and Jones to come on, which they did; that the gas of Jackson's automobile gave out and the stolen goods were transferred to the truck, and the entire party went on towards College Park in the truck, but the gas of the truck gave out when they were about two miles from College Park and they transferred the goods to a vacant house near the road; that it was about 3 o'clock in the morning when they stopped to do this, and it was about 5 o'clock when the goods were unloaded. Jackson further testified: "When we went down there on this trip that night I did not tell either one of these defendants what we were going down there for. I couldn't say that they did not know where we were going, but I did not say anything about it to them. I did not make any trade with them about it. . . After we got the goods at Camp's store I did not tell them anything about having taken the goods from Camp's store. They didn't know that we had taken anything from the store. We just told them to come on. . . I don't suppose these men could see that we had something in the car when we passed them." "I first saw them that night when we were on our way down there." "I did not see them at all that day."

In Green's statement at the trial he said that he had been running a dray at College Park, and bought the truck for the purpose of hauling with it, and that Landrum and Turner asked him if he did not want to make a trip below Newnan with them with his truck; that he agreed to do so if he could get Jones to drive for him; that he and Jones met them on the road that night; that when they arrived in Newnan he and Jones stopped there and bought sandwiches and coca-cola, and when they caught up with the automobile in which the others were riding, the others asked why they stopped, and said "they will know the truck;" that he said to them that he did not see anything crooked about stopping at a restaurant, and one of the other men said, "You wouldn't haul anything crooked in your car, anything like liquor;" that he said he would not do it, and the others said, "All right," and drove on; that he and Jones turned back and went on home, and did not see the others again before they reached home; that when the others employed him, they did not say what they wanted to haul, but asked if he would make a trip. The statement of Jones at the trial was to the same effect.

It was testified that the burglary took place in May, and that about three months later some of the stolen goods were found in woods back of Tanner's house, and that Green and Jones lived near Tanner; that among the goods stolen and recovered were a number of knives of a certain kind; that no stolen goods were found on the premises of Green or Jones; that a knife was taken from Jones, which he said he had found in the road, and which one of the witnesses testified was picked up in the road by Jones in his presence in July; and Camp, president of the H. W. Camp Company, testified that a knife exhibited to him by counsel was of the same pattern and a duplicate of knives in the company's storehouse at the time of the burglary, but he could not say that "this particular knife" was taken, and did not know whether any of that particular pattern was stolen or not. Witnesses for the defendant testified that they saw Green and Jones going homeward in a truck about three o'clock in the morning on the date as to which the other witnesses had testified, and that there was nothing in the truck. One of these witnesses testified that they passed his home in Campbell county at that time. Several witnesses testified as to the good character of Green and Jones.

*P. H. Brewster Jr., G. H. Cornwell,* for plaintiffs in error.

*W. Y. Atkinson, solicitor-general,* contra.